IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.** |
| v. | : | **DATE FILED:** |
| **ALI CHARAF DAMACHE,** a/k/a "Theblackflag" | : | **VIOLATIONS:** 18 U.S.C. § 2339A (conspiracy to provide material support to terrorists - 1 count) |
| | : | 18 U.S.C. § 1028 (attempted identity theft to facilitate act of international terrorism - 1 count) |
| | : | 18 U.S.C. § 2 (Aiding and abetting) |

## INDICTMENT

### COUNT ONE

(Conspiracy to Provide Material Support to Terrorists)

**THE GRAND JURY CHARGES THAT:**

At all times relevant to this indictment unless otherwise stated:

1. Defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," was an Algerian man who resided in Ireland. Defendant DAMACHE used various online usernames to communicate electronically with his associates, including the username "Theblackflag."

2. Colleen R. LaRose, who is charged elsewhere, was a female citizen of the United States who resided with K.G. in Montgomery County, Eastern District of Pennsylvania, until on or about August 23, 2009, after which she traveled to Europe. LaRose used various online usernames to communicate electronically with her associates, including the username "JihadJane."

3. Jamie Paulin Ramirez, who is charged elsewhere, was a female citizen of

the United States who resided in Colorado until on or about September 12, 2009, after which she traveled to Europe.

4. From in or about 2008 through in or about July 2011, in the Eastern District of Pennsylvania and elsewhere, defendant

**ALI CHARAF DAMACHE,**
**a/k/a "Theblackflag,"**

conspired and agreed with Colleen R. LaRose, Jamie Paulin Ramirez, and others known and unknown to the Grand Jury to provide "material support and resources," as that term is defined in 18 U.S.C. § 2339A(b), including but not limited to logistical support, recruitment services, financial support, identification documents, and personnel, and to conceal and disguise the nature, location, source, and ownership of such material support and resources, knowing and intending that the material support and resources were to be used in preparation for and in carrying out violations of Title 18, United States Code, Section 956 (conspiracy to kill in a foreign country).

## MANNER AND MEANS

It was part of the conspiracy that:

5. Defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," and others known and unknown to the Grand Jury, devised and coordinated a violent-jihad organization consisting of men and women from Europe and the United States divided into a planning team, a research team, an action team, a recruitment team, and a finance team, some of whom would travel to South Asia for explosives training and return to Europe to wage violent jihad.

6. Defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," Colleen R.

LaRose, and others known and unknown to the Grand Jury, recruited men online to wage violent jihad in South Asia and Europe.

7. Defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," Colleen R. LaRose, and others known and unknown to the Grand Jury, recruited women online who had passports and the ability to travel to and around Europe in support of violent jihad.

8. Colleen R. LaRose, Jamie Paulin Ramirez, and others known and unknown to the Grand Jury, traveled to and around Europe to participate in and support violent jihad.

9. Colleen R. LaRose and others known and unknown to the Grand Jury solicited funds online for terrorists.

**OVERT ACTS**

In furtherance of this conspiracy, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," Colleen R. LaRose, Jamie Paulin Ramirez, and others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1. On or about June 20, 2008, Colleen R. LaRose posted a comment on YouTube (an information and video sharing website) under the username "JihadJane," stating that she is "desperate to do something somehow to help our Ummah [the Muslim people]."

2. On or about December 8, 2008, Unindicted Co-Conspirator ("CC") #1, a resident of a South Asian country (whose full e-mail address is known to the Grand Jury), sent an electronic communication to Colleen R. LaRose, stating CC #1's desire to wage jihad and become a "shahed" (martyr).

3. On or about December 9, 2008, Colleen R. LaRose sent an electronic communication to CC #1, replying that she also desires to become a martyr.

4. On or about January 2, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to Colleen R. LaRose, advising LaRose of his desire to become a martyr in the name of Allah, and stating "i tried twice but i wasnt successful . . . [but] i will . . . try until Allah will m[a]ke it easy for me."

5. On or about January 2, 2009, Colleen R. LaRose sent an electronic communication to defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," replying that she also desires to become a martyr in the name of Allah.

6. On or about February 20, 2009, Colleen R. LaRose sent an electronic communication to CC #1, advising CC #1 that her physical appearance would allow her to "blend in with many people," which "may be a way to achieve what is in my heart."

7. On or about March 6, 2009, CC #2, a resident of a South Asian country (whose full e-mail address is known to the Grand Jury), sent an electronic communication to Colleen R. LaRose asking LaRose to invite defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," "to come here and get the training."

8. On or about March 6, 2009, CC #2 sent an electronic communication to Colleen R. LaRose stating that CC #2 "can deal in bombs and explosives effecti[v]ely."

9. On or about March 6, 2009, CC #2 sent an electronic communication to Colleen R. LaRose stating that LaRose "can get access to many places due to ur nationality."

10. On or about March 7, 2009, CC #2 sent an electronic communication to Colleen R. LaRose asking LaRose to "marry me to get me inside europe."

11. On or about March 7, 2009, Colleen R. LaRose sent electronic communications to CC #2 agreeing to obtain residency status in a European country and marry CC #2.

12. On or about March 10, 2009, Colleen R. LaRose sent an electronic communication to the Swedish Embassy, asking for instructions on acquiring permanent residency status in Sweden.

13. On or about March 22, 2009, CC #2 sent electronic communications to Colleen R. LaRose directing her to commit murder, and saying, "go to sweden . . . find location of [Resident of Sweden, hereafter referred to as "RS #1"] . . . and kill him . . . this is what i say to u."

14. On or about March 22, 2009, Colleen R. LaRose sent an electronic communication to CC #2, agreeing to kill RS #1, and stating "i will make this my goal till i achieve it or die trying."

15. On or about March 22, 2009, Colleen R. LaRose sent an electronic communication to CC #2 stating, "i agree that it is good i blend in."

16. On or about March 22, 2009, CC #2 sent an electronic communication to Colleen R. LaRose directing LaRose to "kill [RS #1] in a way that the whole Kufar [non-believer] world get frightened."

17. On or about July 1, 2009, Colleen R. LaRose posted or caused to be posted an online solicitation for funds to support terrorism.

18. On or about July 8, 2009, Colleen R. LaRose forwarded to CC #3, a resident of the United States (whose full e-mail address is known to the Grand Jury), electronic

communications from CC #2 in which CC #2 stated to LaRose, "[C]an u arrange funds for us[]? . . . . [T]hen i will later inshAllah tell u how to send them." CC #3 responded by stating, "I have waited for this 'donation' moment for so long and I want to make sure that everything is true so that the money reaches . . . the hands of brothers who are true to their intentions and are REAL mujahids [fighters engaged in violent jihad] not some fbi hungry agents. . . . [N]ow we have confirmed that he is a mujahid . . . ."

19. On or about July 8, 2009, CC #3 posted or caused to be posted an online solicitation for funds to support terrorism on behalf of Colleen R. LaRose stating, "I write this message on behalf of a respected sister . . . . The sister has been in touch with a brother . . . [who] has appealed for urgent funds stating that his resources are limited. . . . [T]he sister has provided me proofs that have confirmed that the brother is . . . true . . . . I know the sister and by Allah, all money will be transferred to her. The sister will then transfer the money to the brother via a method that I will not disclose."

20. On or about July 10, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to CC #2 stating that "sister fatima wants to join you in the jihad field." CC #2 responded with an electronic communication stating, "[I] knew that u wanted to come here . . . . [S]he told me that u know other brothers there in europe . . . and they r willing to join us."

21. On or about July 17, 2009, Colleen R. LaRose falsely told agents of the Federal Bureau of Investigation that she had never solicited funds for terrorism, had never made postings to a terrorist website, and had not used the on-line username "JihadJane."

22. On or about July 17, 2009, Colleen R. LaRose sent an electronic

communication to CC #3, asking CC #3 to contact "the brother in the forum & ask him to PLEASE remove ALL my posts there . . . [because] i told the fbi guy, that i don't know that site."

23. On or about July 17, 2009, CC #3 sent electronic communications to multiple online forums requesting the deletion of all posts by Colleen R. LaRose, because "she is being threatened by the fbi"and "so they can't use it as an evidence against her."

24. On or about July 18, 2009, CC #2 sent an electronic communication to defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," stating that CC #2 is "with T" and that he "also go[es] with brothers of AQ . . . . [T]he exact specialization of me and my other group is 'explosive.'" Defendant DAMACHE responded by stating that his own "plan and the plan of my brothers here is to get a good training and then come back to europe to do some plays."

25. On or about July 19, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication using the username "Theblackflag" to CC #3, asking CC #3 to recruit online "some brothers that can travel freely . . . with eu passports . . . . [A]nd i also need some sisters too." Defendant DAMACHE further advised CC #3 that the group would train "either with AQIM or ISI," and would be "a professional organised team."

26. On or about July 19, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to CC #3 advising that, "sister fatima will be in charge of other sister care . . . . [W]e have already organized every thing for her. . . . [W]e are will[ing] to die in order to protect her no matter what the risk is."

27. On or about July 22, 2009, CC #3 sent an electronic communication to defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," stating that "if the strikes are

successful I hope to see new videos . . . or even if they aren't."

28. On or about July 22, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to CC #4, a resident of a Western European country (whose complete username is known to the Grand Jury), recruiting CC #4 to take care of Colleen R. LaRose upon LaRose's arrival in Europe, and advising that "this is real."

29. On or about July 30, 2009, Jamie Paulin Ramirez sent an electronic communication to Colleen R. LaRose stating, "I received a message from [defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag"] stating that you need to talk to me urgently. What is going on sister?"

30. On or about August 1, 2009, Colleen R. LaRose and Jamie Paulin Ramirez engaged in an exchange of electronic communications in which LaRose stated, "soon i will be moving to europe to be with other brothers & sisters . . . . when i get to europe, i will send for you to come be with me there . . . . [T]his place will be like a training camp as well as a home." Ramirez responded by stating, "i would love to go over there," and she asked to bring along her minor male child.

31. On or about August 1, 2009, Colleen R. LaRose and Jamie Paulin Ramirez engaged in an exchange of electronic communications in which LaRose stated, "when our brother[s] defend our faith [&] their homes, they are terrorist . . . . fine, then i am a terrorist & proud to be this." Ramirez responded by stating, "thats right . . . . if thats how they call it then so be it i am what i am."

32. In or about August 2009, Colleen R. LaRose knowingly took and transferred to CC #3 the United States passport of K.G. as well as other documents and material

belonging to K.G., without the permission of K.G., in order to provide the passport to the "brothers."

33. On or about August 4, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to CC #3, advising CC #3 to send the "packages" from Colleen R. LaRose to defendant DAMACHE under a fake name.

34. In or about August 2009, CC #3 removed the United States passport of K.G. from the package sent to him by LaRose, forwarded the remainder of the package to defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," and hid the passport away in order to provide it to the "mujaahideen" later.

35. On or about August 6, 2009, Colleen R. LaRose sent an electronic communication to CC #5, a resident of an Eastern European country (whose complete username is known to the Grand Jury), asking CC #5 whether CC#5 has a passport and wants to join the jihadist cause.

36. On or about August 7, 2009, Jamie Paulin Ramirez sent an electronic communication to Colleen R. LaRose stating that Ramirez has been speaking to defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," and that, "If you are on your way to des[ti]nation Allah bless you in your travels . . . ."

37. On or about August 7, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to CC #6, a resident of an Eastern European country (whose e-mail address is known to the Grand Jury), recruiting CC #6 to find brothers and sisters to go to a "camp for training . . . and th[e]n come back to europe to do the job . . . . [T]he job is to [k]nock down some individual[s] that are harming islam."

38. On or about August 7, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to CC #6, explaining that defendant DAMACHE is structuring "an ORGANIZATION" divided into a "plan[n]ing team . . . research team . . . action team . . . recruitment team . .. finance team."

39. On or about August 10, 2009, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," sent an electronic communication to CC #2 asking, "when do you need the documents." CC #2 replied that he will advise defendant DAMACHE when he (CC #2) is ready to receive the documents.

40. On or about August 11, 2009, CC #2 sent an electronic communication to defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," advising defendant DAMACHE to keep a "low profile" and remove his beard.

41. On or about August 11, 2009, CC #3 forwarded a questionnaire to Colleen R. LaRose in which CC #3 asked another woman about her beliefs and intentions with regard to jihad. In his questionnaire, CC #3 stated that the "most important" questions are: "Are you a European citizen and do you live in Europe? If not, then do you have any traveling restrictions if you ever wanted to travel to Europe? Do you have a European passport?" CC #3 concluded his questionnaire by stating, "The reason why I am not providing much information as to why I am asking the above-mentioned information from you is due to security. . . . Also if you have any contacts to other sisters[ ](only the ones whom you extremely trust...!!!), please forward this message to them."

42. On or about August 21, 2009, Colleen R. LaRose sent an electronic communication to CC #1 stating, "i will be away from here in a couple days . . . . Then . . . , I

will get to work on importan[]t matters."

43. On or about August 23, 2009, Colleen R. LaRose removed and concealed the hard drive from her home computer.

44. On or about August 23, 2009, Colleen R. LaRose traveled to Europe with the intent to live and train with jihadists, and to find and kill RS #1.

45. On or about August 31, 2009, Colleen R. LaRose sent an electronic communication to CC #1, telling CC #1 that defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," was "very eager to join other brothers" and wished to correspond with CC #1.

46. On or about September 3, 2009, Colleen R. LaRose performed online searches regarding RS #1 and his location.

47. On or about September 8, 2009, Colleen R. LaRose joined an online community hosted by RS #1 and became a "citizen" of RS #1's artists' enclave in Sweden.

48. On or about September 12, 2009, Jamie Paulin Ramirez traveled to Europe with her minor male child with the intent to live and train with jihadists.

49. On or about September 13, 2009, the day she arrived in Europe, Jamie Paulin Ramirez married defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," whom she had never before met in person.

50. While they were living together in Europe, defendant ALI CHARAF DAMACHE, a/k/a "Theblackflag," and Jamie Paulin Ramirez began training Ramirez's minor male child in the ways of violent jihad.

51. On or about September 25, 2009, CC #1 sent an electronic communication to Colleen R. LaRose saying "the brothers are ready," and asking LaRose to send money to

Somalia.

52. On or about September 28, 2009, Colleen R. LaRose sent an electronic communication to CC #1, stating, "i will tell whoever i ask about sending funds to there, that the reason i want to send money there is for a sister, in other words i will lie to the kafir [non-believer] animals."

53. On or about September 30, 2009, Colleen R. LaRose sent an electronic communication to CC #2, stating that LaRose considers it "an honour & great pleasure to die or kill for" CC #2, and pledging that "only death will stop me here that i am so close to the target!"

54. On or about October 12, 2009, CC #2 sent an electronic communication to Colleen R. LaRose saying "tell me about Ali and the documents."

55. From in or about August 2009 through in or about July 2011, CC #3 maintained in hiding the United States passport of K.G.

All in violation of Title 18, United States Code, Section 2339A.

## COUNT TWO

### (Attempted Identity Theft to Faciliate Act of International Terrorism)

THE GRAND JURY FURTHER CHARGES THAT:

From in or about August 2009 through in or about July 2011, in the Eastern District of Pennsylvania and elsewhere, defendant

**ALI CHARAF DAMACHE,**
a/k/a "Theblackflag,"

knowingly transferred, and attempted to transfer, and aided and abetted the transfer of, an identification document, that is, a United States passport belonging to K.G., knowing that such document was stolen, and the identification document was or appeared to have been issued by or under the authority of the United States, and the offense was committed to facilitate an act of international terrorism (as defined in Section 2331(1) of Title 18).

In violation of Title 18, United States Code, Sections 1028(a)(2), (b)(4), (f), and 2.

A TRUE BILL:

_____
GRAND JURY FOREPERSON

*[signature]*
ZANE DAVID MEMEGER
United States Attorney