IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 11-420 |
| ALI CHARAF DAMACHE,<br>a/k/a "Theblackflag" | : | |

GOVERNMENT'S CHANGE OF PLEA MEMORANDUM

I. INTRODUCTION

Defendant Ali Charaf Damache has informed the government that he wishes to plead guilty to Count One of the Superseding Indictment in this case, charging him with conspiracy to provide material support to terrorists in violation of 18 U.S.C. § 2339A, arising from his participation in a scheme to support, recruit, and coordinate members of a conspiracy in their plan to wage violent jihad in and around Europe.

II. PLEA AGREEMENT

The government and defendant have signed a plea agreement (attached as Exhibit A), pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), in which the defendant agrees to plead guilty to Count One of the Superseding Indictment in this case and be sentenced to a term of 15 years' imprisonment. The government asserts that this resolution is fair, reasonable, and in the interest of justice. In summary, the plea agreement contains the following provisions:

1. The parties agree that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and that the following specific sentence is the appropriate disposition of this case: 180 months of imprisonment, accompanied by a Stipulated Judicial

1

Order of Removal pursuant to section 238(c)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1228(c)(5), together resulting in the defendant's transfer without undue delay, upon completion of the prison sentence, into immigration custody for uncontested removal from the United States. If the Court does not accept this plea agreement, then either the defendant or the government will have the right to withdraw from the plea agreement and insist that the case proceed to trial.

2. The defendant has consulted with his attorney and hereby knowingly and willfully consents to a Joint Motion for a Stipulated Judicial Order of Removal and the entry of a Stipulated Judicial Order of Removal pursuant to Section 238(c)(5) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1228(c)(5) in this case. The plea agreement further sets forth the following facts in support of the Stipulated Judicial Order of Removal:

   a. The defendant admits he is not a citizen or national of the United States.

   b. The defendant admits he is a native of Algeria and citizen of Ireland.

   c. The defendant admits he was extradited to and paroled into the United States on July 21, 2017, for criminal prosecution.

   d. The defendant admits he is inadmissible to the United States pursuant to INA § 212(a)(3)(B)(i)(I), 8 U.S.C. § 1182(a)(3)(B)(i)(I), as an alien who engaged in terrorist activity, as described in INA §§ 212(a)(3)(B)(iv)(II), 8 U.S.C. § 1182(a)(3)(B)(iv)(II) (relating to the preparing or planning of a terrorist activity); 212(a)(3)(B)(iv)(V), 8 U.S.C. § 1182(a)(3)(B)(iv)(V) (relating to soliciting an individual to engage in terrorist activity); and 212(a)(3)(B)(iv)(VI)(bb), 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(bb) (relating to

providing material support to an individual who the actor knows or should reasonably know plans to commit a terrorist activity).

    e.    The defendant admits he is inadmissible to the United States because he:

        i.    between 2008 and 2011, provided, and conspired with others to provide, material support and resources to terrorists, knowing and intending that the material support and resources were to be used in preparation for and in carrying out violations of Title 18, United States Code, Section 956 (conspiracy to kill in a foreign country);

        ii.    devised and coordinated a violent-jihad organization consisting of men and women from Europe and the United States who were divided into a planning team, a research team, an action team, a recruitment team, and a finance team, and that some members of these teams would travel to South Asia for explosives training and then to Europe for purposes of committing terrorist acts against those the defendant described as "harming [I]slam;"

        iii.    trained a minor male child in the ways of violent jihad;

        iv.    recruited men online to commit terrorist acts in South Asia and Europe; and

        v.    recruited women online who had passports and the ability to travel to and around Europe in support of terrorist acts.

3.    The defendant further understands that, as a result of the Stipulated Judicial Order of Removal, upon the completion of the defendant's criminal proceedings, including any

sentence of incarceration, the defendant shall be removed from the United States and returned to Ireland, his country of citizenship. In the event that Ireland refuses to permit the defendant entry or admission, then he shall be removed to Algeria, his country of birth and citizenship. In the event that Algeria refuses the defendant entry or admission, he shall be removed to any other country prescribed by the laws and regulations of the United States. The defendant further agrees as follows:

    a.    After consultation with counsel and understanding the legal consequences of doing so, the defendant knowingly and voluntarily waives the right to the notice and hearing provided for in INA § 238(c)(2), 8 U.S.C. § 1228(c)(2), and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal order. The defendant understands and knowingly waives his right to a hearing before an immigration judge or any other authority under the INA, on the question of the defendant's removability from the United States. The defendant further understands the rights the defendant would possess in a contested removal proceeding and waives these rights, including the defendant's right to examine the evidence against him, to present evidence on his behalf, and to cross-examine the witnesses presented by the government.

    b.    The defendant also understands and knowingly waives the defendant's rights to any and all forms of relief or protection from removal, deportation, or exclusion under the INA and related federal regulations.

      These rights include, but are not limited to, the ability to apply for asylum; withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3); protection from removal under the regulations implementing the U.S. obligations pursuant to Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment; cancellation of removal; adjustment of status to that of a lawful permanent resident; temporary protected status (TPS), to include *de novo* review of any denial or revocation of TPS; any waivers of inadmissibility under the INA; visa petitions; voluntary departure or any other possible relief or protection from removal available under the Constitution, laws or treaty obligations of the United States.

c.    As part of this agreement, the defendant specifically acknowledges and states that he has not been persecuted in any country, and has no present fear of persecution in Ireland, Algeria or any other country on account of his race, religion, nationality, membership in a particular social group, or political opinion. Similarly, the defendant further acknowledges and states that he has not been tortured in, and has no present fear of torture in Ireland, Algeria or any other country.

d.    The defendant hereby requests that an Order be issued by this Court for his removal to Ireland, his country of citizenship, or, in the event that Ireland refuses to permit the defendant entry or admission, to Algeria, his country of birth and citizenship, or to any other country prescribed by the

5

immigration laws and regulations of the United States. The defendant agrees to accept a written order of removal as final and binding both in this criminal case and in his immigration proceedings, and defendant waives any and all rights to challenge any provision of this agreement in any United States or foreign court or tribunal.

e. The defendant hereby agrees to make the Stipulated Judicial Order of Removal a public document, waiving his privacy rights, including his privacy rights under 8 C.F.R. § 208.6.

f. The defendant agrees to assist ICE in the execution of his removal. Specifically, the defendant agrees to assist ICE in the procurement of any travel or other documents necessary for the defendant's removal; to meet with and to cooperate with representatives of the country or countries to which the defendant's removal is directed; and, to execute those forms, applications, or waivers needed to execute or expedite the defendant's removal. The defendant further understands that his failure or refusal to assist ICE in the execution of his removal shall breach this plea agreement and may subject the defendant to criminal penalties under INA § 243, 8 U.S.C. § 1253.

g. The defendant concedes that the entry of the Stipulated Judicial Order of Removal renders him permanently inadmissible to the United States. He agrees that he will not enter, attempt to enter, or transit through the United States without first seeking and obtaining permission to do so from the

     Secretary of the Department of Homeland Security or other designated representative of the U.S. government.

  h. The parties agree that the Court's failure, for any reason, to enter the judicial order of removal, shall make this plea agreement, and the promises contained herein, null and void.

4. The Eastern District of Pennsylvania and the National Security Division will not oppose a request by the defendant to receive credit for time served abroad that was the direct result of his extradition on these charges, as set forth in the letters attached to the plea agreement, and was not credited against another sentence, as set forth in 18 U.S.C. § 3585(b).

5. The defendant agrees to pay the special victims/witness assessment in the amount of $100 at such time as directed by the Court.

6. The defendant understands, agrees, and has had explained to him by counsel that by entering this plea agreement he is giving up the right to challenge the government's decision to withhold production of classified information and to receive further pretrial discovery from the government except as necessary to prepare for sentencing proceedings.

7. If the Court accepts the agreement of the parties, the government agrees that it will not file any appeal of the sentence in this case, and the defendant agrees that he voluntarily and expressly waives all rights to appeal or collaterally attack the conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.  As part of this knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence, the defendant expressly waives the right to raise on appeal or on

collateral review any argument that (1) the statutes to which the defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes. However, the defendant retains the right to file a claim, if otherwise allowed by law, that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance.

8. If the Court does not accept the recommendation of the, and the defendant nevertheless decides to enter a guilty plea, without objection by the government, then the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. As part of this knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence, the defendant expressly waives the right to raise on appeal or on collateral review any argument that (1) the statute to which the defendant is pleading guilty is unconstitutional and (2) the admitted conduct does not fall within the scope of the statute.

  a. Notwithstanding the waiver provision in this paragraph, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

  b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only a claim:

    i. that the defendant's sentence on any count of conviction exceeds

        the statutory maximum for that count as set forth above;

  ii.    challenging a decision by the sentencing judge to impose an "upward departure" pursuant to the Sentencing Guidelines;

  iii.    challenging a decision by the sentencing judge to impose an "upward variance" above the final Sentencing Guideline range determined by the Court; and

  iv.    that an attorney who represented the defendant during the course of this criminal case provided constitutionally ineffective assistance of counsel.

If the defendant does appeal pursuant to this subparagraph, no issue may be presented by the defendant on direct appeal other than those described in this subparagraph.

9.    The defendant acknowledges that filing an appeal or any collateral attack waived in either of the two preceding paragraphs may constitute a breach of this plea agreement. The parties acknowledge that the filing and pursuit of an appeal constitutes a breach only if a court determines that the appeal does not present an issue that a judge may reasonably conclude is permitted by an exception to the waiver stated in the preceding paragraph or constitutes a "miscarriage of justice" as that term is defined in applicable law.

III.    <u>MAXIMUM PENALTIES</u>

The Court may impose the following maximum sentence: 15 years imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment. Further, the defendant's supervised release may be revoked if its terms and conditions are violated, in which

case the original term of imprisonment may be increased by up to 2 years. In addition, the defendant is not a citizen of the United States and may be subject to immigration proceedings resulting in his removal from the United States.

VI. ELEMENTS OF THE OFFENSE

In order to prove that the defendant violated 18 U.S.C. § 2339A (providing material support to terrorists), the government must prove beyond a reasonable doubt that:

1. The defendant provided material support or resources; and

2. The defendant did so knowing or intending that such support or resources would be used in preparation for or in carrying out a conspiracy to kill in a foreign country in violation of 18 U.S.C. § 956.

V. FACTUAL BASIS FOR THE PLEA

If this case were to go to trial, the government would be able to prove each element of the offense beyond a reasonable doubt. The government would introduce witness testimony, to include the testimony of co-conspirators, as well as electronic evidence to prove that Ali Charaf Damache participated in the charged conspiracy to provide material support and resources to terrorists, knowing and intending that such material support and resources were to be used in preparation for and in carrying out a conspiracy to kill, kidnap, maim, or injure persons or damage property in a foreign country. To that end, the government would prove every Overt Act listed in the Superseding Indictment.

For example, the government would present extensive evidence of electronic communications between the co-conspirators outlining their efforts to support, recruit, and coordinate a terrorist cell to wage violent jihad in and around Europe. The government would

present a series of electronic communications dated July 19, 2009, in which defendant Damache advised co-defendant Mohammad Hassan Khalid that their group would train "either with AQIM [Al Qaeda in the Islamic Maghreb] or ISI [Islamic State of Iraq]," and would be "a professional organised team." Damache directed Khalid to recruit online "some brothers that can travel freely . . . with eu passports . . . . [A]nd i also need some sisters too." Damache explained to Khalid that "sister fatima [Colleen LaRose, charged elsewhere] will be in charge of other sister care . . . . [W]e have already organized every thing for her. . . . [W]e are will[ing] to die in order to protect her no matter what the risk is."

The government would prove through documentary evidence and witness testimony that Khalid thereafter sent an electronic questionnaire to a woman asking about her beliefs and intentions with regard to jihad, including whether or not she had a European passport and could travel freely, and that he forwarded his questionnaire to LaRose. The government would further prove that Damache communicated with another co-conspirator (called CC #5 in the superseding indictment), directing CC #5 to find brothers and sisters to go to a "camp for training . . . and th[e]n come back to europe to do the job . . . . [T]he job is to [k]nock down some individual[s] that are harming islam." Damache further advised CC #5 about his efforts to structure "an ORGANIZATION" divided into a "plan[n]ing team . . . research team . . . action team . . . recruitment team . . . finance team."

The government would also present witness testimony and documents to prove that Khalid and LaRose communicated extensively about their shared desire to support violent jihad, and that they worked together online to raise funds to support terrorism. Khalid also sought

11

confirmation from LaRose that her "brothers" are "REAL muhahids" [fighters engaged in violent jihad], and he helped remove her online pro-jihad posts after the FBI interviewed her.

The government would further prove through documentary evidence and witness testimony that LaRose sent Khalid a United States passport and other identification documents belonging to another person. In connection with that effort, Damache sent an electronic communication to Khalid, advising Khalid to send the "packages" from LaRose to Damache under a fake name. Although records and witness testimony will prove that Khalid forwarded some of LaRose's documents to Damache in Europe, Khalid's electronic communications will be introduced to show that he removed and concealed the United States passport so that he could personally provide it to the "mujaahideen."

The government would also present documentary evidence and witness testimony that Damache communicated with Jamie Paulin Ramirez, charged elsewhere, who ultimately traveled from the United States to Europe with her minor child and married Damache. Through witness testimony, the government would further prove that while Damache and Ramirez were living together in Europe, Damache began training Ramirez's minor male child in the ways of violent jihad.

                                         Respectfully submitted,

                                         WILLIAM M. McSWAIN
                                         United States Attorney

                                         */s/ signature*

                                         JENNIFER ARBITTIER WILLIAMS
                                         First Assistant United States Attorney
                                         SARAH M. WOLFE
                                         Assistant United States Attorney

MATTHEW F. BLUE
C. ALEXANDRA BOGLE
Trial Attorneys
Counterterrorism Section
U.S. Department of Justice

Dated: July 19, 2018